IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| United Construction & Supply, Inc., ) | |
| ) | |
| Plaintiff, ) | **ORDER GRANTING DEFENDANT'S** |
| ) | **MOTION FOR SUMMARY** |
| vs. ) | **JUDGMENT AND DISMISSAL OF** |
| ) | **REMAINING STATE CLAIMS** |
| City of Kulm, North Dakota, ) | |
| ) | Civil File No. 3:04-cv-101 |
| Defendant. ) | |

**Issue**

Before this Court is Defendant's Motion for Summary Judgment as to Plaintiff's 42 U.S.C. §§ 1981 and 1985 claims (doc. #27) and Defendant's Motion for Summary Judgment on Plaintiff's state claims of breach of warranty and breach of contract (doc. #36). Defendant has filed briefs on these matters (docs. #28 and 37). Plaintiff has filed a brief in opposition (docs. #31 and 40).

**Facts**

United Construction & Supply, Inc. ("United") was formed in 1983 by Larry Azure, and is based out of Valley City, North Dakota. Azure was a Native American and United is considered a minority contractor. Mr. Azure died on April 3, 2002. United then was headed by Mr. Azure's wife, Jeanette Azure, who had not been previously involved in United's operations. United dissolved most of its work crew shortly after Mr. Azure's death, but United still pursued some projects. Ms. Azure's sons from a previous marriage, Terry Houle, Jesse Houle, and Darrel Houle, were also employed by United.

The City of Kulm ("Kulm") is a 420 person municipality in Lamoure County, North Dakota, governed by a four-person city council and a mayor. In early 2002, Kulm advertised for bids for the construction of a sewer replacement project. Copies of the construction plan and

specifications were on file with the City Auditor and with Moore Engineering ("Moore"), the project engineer retained by Kulm for the project. Kulm submitted a bid for $1,057,555.30 and was awarded the project. United signed the construction agreement which required United to, among other things, "supervise, inspect, and direct the Work competently and efficiently, devoting such attention thereto and applying such skills and expertise as may be necessary to perform the Work in accordance with the Contract Documents." United began work in July of 2002. After United was awarded the project but before work began, United's two most experienced workers, Brian Meyer and Bryan Beedle, left United's employment over a pay dispute. Meyer served as United's project manager and Beedle was United's foreman. United was subsequently left with a less experienced workforce when starting the project in July of 2002. Ms. Azure stated that United's bidding for work was dependent on the amount of work that Meyer and Beedle could handle, and the bidding on the Kulm project was based on an assumption of Meyer and Beedle's continued service to United. United's remaining employees had little or no experience doing underground work.

Moore is an engineering firm in West Fargo, North Dakota. Larry DuBord was the on-site manager for Moore. Roger Fenstad was the project manager of the project for Moore. Rural Development of North Dakota provided the funding for the project to Kulm and was represented by Rodney Beck. DuBord would submit any change order requests to Fenstad who would then give them to Beck for approval.

Throughout the project Kulm expressed concerns about United's lack of skilled workers. United subsequently promised to have two full crews performing the backfilling and sub-grade preparation work. On June 12, 2003, Kulm sent a letter terminating United from the project. Fenstad of Moore Engineering concurred in the decision that United should be terminated. Instead of leaving the job site, United contested the termination and increased their efforts on the

project. In United's response to Kulm's letter of termination, United never claimed the termination decision was based on discrimination or other racial animus. Kulm allowed United to complete the project based on United's increased efforts. United later received total payments of $1,137,595.38 for the project. After the project was completed, United's representative Darrel Steele presented Kulm with a "claim book" which outlined items that United had yet to pay for. These additional claims were rejected by Kulm after consulting with Moore. This suit followed.

United's complaint included claims for relief relating to discrimination, specifically to 42 U.S.C.§ 1981 and 42 U.S.C. § 1985(3). Plaintiff contends that Kulm discriminated against United because of United's Native American composition and deprived United of its right to enjoy the fruits of a contract it entered into with Kulm. Furthermore, United contends that under section 1985(3) Kulm entered into a conspiracy to deprive United of equal rights through discrimination. The section 1981 and 1985 claims provide the basis for federal jurisdiction.

United has alleged that a number of discriminatory statements were made by Larry DuBord of Moore, Rod Beck of Rural Development, and Kulm's Mayor Eugene Taszarek during the completion of the project. DuBord is alleged to have referred to United Employees Houle, Rode, and Steele, as "you people." Specifically, these United employees approached DuBord at his on-site trailer and confronted him. DuBord responded, "I don't have to tell them anything. I don't have to talk to those people." John Gassmann is United's attorney who represents United's day to day construction issues. He stated that DuBord said, "I'm tired of you people on this job. I don't want to talk to you. I don't want to see you on this job anymore." DuBord maintains that his use of the term "you people" was not meant as derogatory towards Native Americans, instead it was how he addressed groups of people in place of naming them individually. He further stated that his refusal to speak with the visitors was prompted by them attempting to record his comments on some sort of recording device.

Rod Beck is alleged to have referred to United as "these people." Gassmann was at a different meeting between Moore, United, Rod Beck, and Mayor Taszarek. He states that no derogatory comments were made during the meeting but heard Beck say to Fenstad in the hallway that he wanted "these people terminated." Fenstad denies hearing such a statement from Beck. No Kulm official was aware of this comment.

Terry Houle, a United employee, stated that DuBord asked him, "why do you have so many of your relatives working" and Steele, another United employee, stated DuBord commented to Gassmann that United, "always hire[s] their relatives." Steele and Houle also stated that DuBord told several United employees that, "Those people [United] were going to get kicked off of this site because they weren't making any progress and they were too stupid to know how to do this project right." This comment was never brought to Kulm's attention.

Mayor Taszarek is also alleged to have made comments indicative of discrimination. Specifically, Taszarek witnessed an United truck drive down a Kulm street newly covered with asphalt. Steele, who was present, said that Taszarek saw the truck driving down the new street and stated, "Look at those people. They're not even smart enough to know not to be driving so fast." Gassmann, who was also present, stated that Mayor Taszarek said, "Look at those people. They don't even know how to drive a loaded truck on this new asphalt. They're going to ruin it." Gassmann then told the Mayor that he "should worry more about the contractor [not a United employee] on the northeast end of town who is driving tracked equipment on his new asphalt." Mayor Taszarek later stated in his deposition that his use of "you people" was his common way to address people and was not racially motivated. He stated that, "If I said, 'You guys, what are you doing out there?' That's my comments to anybody, my own family. 'Hey you guys, you

4

can't drive here.' Nothing negative." (Taszarek depo. at 177).  Mayor Taszarek was also asked if minority contractors had done any other work for the city on the tower, the lagoon, or the swimming pool.  He replied, "Yeah.  On the tower, there were - there was one dark fella that worked on the tower."  When asked about city work performed on the lagoon or swimming pool by minorities, he stated, "Oh golly.  I really don't pay attention because I'm a friend of everybody, you know.  I think everybody deserves a good chance every place.  But Holden Construction did the lagoon."  Additionally he was asked if Holden Construction was a Native American contractor and he replied, "No, he's white."

Other than the Mayor's comment, no other comments were made by representatives of Kulm.  Furthermore, no instances of derogatory comments or discrimination were reported to Kulm during the project.

## ANALYSIS

The Eighth Circuit describes the summary judgment process in Uhiren v. Bristol-Meyers Squibb Company, Inc., 346 F.3d 824, 827 (8th Cir. 2003).

> Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.  The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 577 U.S. 317, 323 (1986).  Such a showing shifts to the non-movant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-movant "must show there is sufficient evidence to support a jury verdict in [his] favor." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999).  "Factual disputes that are

5

> irrelevant or unnecessary will not be counted," Anderson, 477 U.S. at 248, and a mere scintilla of evidence supporting the non-movant's position will not fulfill the non-movant's burden." Id. at 242.

In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587. The non-moving party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial. Williams v. Lindenwood Univ., 288 F.3d 355 (8th Cir. 2002) (citing Raddatz v. Standard Register Co., 31 F. Supp.2d 1155, 1157 (D. Minn. 1999)). The court may not weigh the credibility of the evidence, but rather focus on whether a genuine issue of material fact exists for trial. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979).

### I. United's 42 U.S.C. § 1981 Claim

The purpose of 42 U.S.C. § 1981 is to prohibit discrimination in the "performance, modification, and termination of contracts" and to protect "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Williams, 288 F.3d at 355. (citing 42 U.S.C. § 1981(b)). Because United's discrimination claim is "based on inferences to be drawn from circumstantial evidence, it is governed by the familiar burden-shifting analysis." Id.

> Once the plaintiff establishes a *prima facie* case of racial discrimination, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions to rebut the presumption of discrimination. Then, the plaintiff must demonstrate that the defendant's proffered reason was a pretext for unlawful discrimination. The 'ultimate question of law [is] whether the evidence is

>sufficient to create a genuine issue of fact as to whether the defendant intentionally discriminated against the plaintiff.'

Id. (citations omitted); see McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The plaintiff must satisfy three elements to sustain a prima facie case under 42 U.S.C. § 1981. The plaintiff must to show: (1) that plaintiff is a racial minority; (2) defendant's intended to discriminate on the basis of race; and (3) the discrimination deprived plaintiff of the "benefits, privileges, terms and conditions of the contractual relationship." Williams, 288 F.3d at 355-57.

### 1. United's Prima Facie Case

It is undisputed that United is properly classified as a minority contractor. The first element of United's prima facie case is therefore satisfied.

The second element of the prima facie claim requires United to demonstrate that Kulm, through its deliberate conduct, was the "moving force" behind the alleged discrimination. It is well settled that liability cannot be imposed under 42 U.S.C. § 1981 without proof of purposeful or intentional discrimination. Davis v. Strata Corp., 242 F. Supp. 2d 643, 649 (D.N.D. 2003) (citing General Building Contractors Ass'n, Inc. v. Pennsylvania, 485 U.S. 375, 382 (1982)). This moving force may be the product of a governmental policy or custom, Speer v. City of Wynee, 276 F.3d 980, 986 (8th Cir. 2002) (citing Monell v. Department of Social Services, 436 U.S. 658, 694 (8th Cir. 1978)), or, in the alternative, it can be established through proof that the alleged misconduct was so pervasive among the non-policy making employees as to rise to the level of "custom or usage." McGautha v. Jackson County, Mo., Collections Dept., 36 F.3d 53, 56-57 (8th Cir. 1994) (quoting Monell, 436 U.S. at 690-91).

This Court first addresses whether there is sufficient evidence to support a finding that there existed a governmental policy or custom of discrimination.  The only statement made by a Kulm official that is alleged to have the tinge of racial bias was the single statement by Mayor Taszarek regarding the driving of a United truck on fresh asphalt.  His statement of "those people" was made in the company of two United employees, one of which is Native American.  Caselaw reveals, however, that isolated use of the phrases "you people" or "those people" are not, standing alone, discriminatory.  In <u>Whitley v. Peer Review Systems</u>, the Eighth Circuit noted that the phrases "girl" and "you people," in the context of that case, did not evince an intent to discriminate against an African-American employee.  221 F.3d 1053, 1056 (8th Cir. 2000).  In this case, the speaker steadfastly maintains that the phrase was used as an innocuous reference to a group of employees, not as a reference to a racial group.  Other courts have found similar phrases as insufficient to make a prima facie showing of discrimination.  See <u>Walker v. Inland Boatman's Union of the Pac. Marine Div. of the I.L.W.U.</u>, 6 Fed.Appx. 571, 572 (9th Cir. 2001) (phrase "you people" is ambiguous and does not satisfy prima facie burden of demonstrating discrimination); <u>De Jesus v. Potter</u>, 397 F. Supp. 2d 319, 326 (D. Puerto Rico 2005) ("we can infer absolutely no discriminatory intent in the use of the words 'you people'"); <u>Griffin v. Ambika Corp.</u>, 103 F. Supp. 2d 297, 314-15 (S.D.N.Y. 2000) (phrase "you people" cannot be deemed per se racially offensive).  See also <u>Rivero v. United Airlines, Inc.</u>, 2005 U.S. Dist. LEXIS 29733, at *10 (N.D. Ill. Nov. 22, 2005); <u>Pruett v. Columbia House Co.</u>, 2005 U.S. Dist. LEXIS 7124, at *42 (phrase "you people" is not direct evidence of discrimination, particularly when coming from a non-decision maker).  In fact, the Eighth Circuit has noted that the similar phrase "those guys" could serve as a non-discriminatory, race-neutral substitute for a

description of a group of minorities.  Williams, 288 F.3d at 356-57.  In the present case, the Mayor's single utterance of "those people," given the context of the statement, does not evince a city custom or policy of discrimination.

Plaintiff also points to another statement of Mayor Taszarek's as proof of racial bias by a Kulm decision maker, namely the Mayor's utterance "there was that one dark fella that worked on the tower."  This desperate argument is severely flawed for two reasons.  First, this comment did not occur during the time United was employed by Kulm, or even before United's termination.  Rather, this comment was made in a deposition and is therefore not particularly illuminating as to the policy and customs of the City of Kulm at the time of the alleged discrimination.  Secondly, the comment was made in direct response to a question by Plaintiff's counsel wherein the mayor was asked if any city contract work had been performed by minority contractors.  In essence, Plaintiff asked the Mayor a question that demanded a racially specific answer.  The Mayor's response, however inartful, cannot be seriously interpreted as immediate, stand-alone validation of the city's discriminatory intent.

The evidence is equally insufficient to support a finding of pervasive discrimination, rising to the level of "custom or usage," by non-decision makers.  Plaintiff can only set forth isolated uses of the phrases "you people" and "those people" made by employees of Moore Engineering.  At the outset, it is questionable whether comments from Moore employees can even serve as the basis for the present civil rights claim.  Daniels v. Dillard's, Inc., 373 F.3d 885, 888, n.4 (8th Cir. 2004) (noting liability under § 1981 "requires a showing of intentional discrimination, which is seemingly incompatible with respondeat superior principles."); Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1992); Flanagan v. Aaron E. Henry

Community Health Services Ctr., 876 F. 2d 1231, 1236 (5th Cir. 1989). Assuming, without deciding, that comments made by Moore employees are relevant, the phrases "you people" or "those people, " as discussed above at length, are not, given the present context, per se discriminatory. Plaintiff also points to the statement of DuBord, where he asked Terry Houle why he had so many of his relatives working at United, as a statement that somehow demonstrates racial animus. Plaintiff seemingly argues that DuBord, in asking such a question, implicitly assumes that all Native Americans look or behave similarly. However, it bears noting that Houle did, in fact, have many relatives working on the Kulm project. Houle's employer, United, was owned and run by his mother. Terry Houle's two brothers, Jesse and Darrell, were also employed by United. As such, this Court cannot attach any weight to this statement.

Given the context in which the various "you people" or "these people" comments were made, the Court cannot find that there exists a genuine factual issue for trial. Plaintiff has not introduced evidence sufficient to satisfy a prima facie showing of discrimination. Because the Plaintiff has not met its burden as to the second element of the prima facie claim, the Court will not address the third element. This Court, after all, cannot determine the range and effect of alleged discrimination if it has already determined that such discrimination is a mere apparition. Summary judgment is thus proper as to Plaintiff's section 1981 claim.

## II. United's 42 U.S.C. § 1985(3) claim

Plaintiff also seeks relief through a civil rights conspiracy claim under 42 U.S.C. § 1985(3). Section 1985 governs conspiracies to deprive persons of "equal protection of the law or of equal privileges and immunities under the laws." Bray v. Alexandria Women's Health Clinic,

506 U.S. 263, 269 (1993).  The elements of a 1985 claim are (1) the defendants did conspire; (2) such a conspiracy was for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or equal privileges and immunities under the laws; (3) one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy; and (4) another person was injured in his person or property or deprived of having or exercising any right or privilege of a citizen in the United States.  Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc) (citing 42 U.S.C. § 1985(3)).  The second element, that of "purpose," requires that Plaintiff prove a class-based "invidiously discriminatory animus."  Id.  Plaintiff must also "allege with particularity and demonstrate with material facts that the defendants reached an agreement" or at least an understanding, to violate the Plaintiff's rights.  Id.

      As Defendant rightly points out, Plaintiff's conspiracy claim is logically faulty in that United argues that Moore served as an agent representative of the City and that comments made by Moore employees should thus be attributable to the city for section 1981 purposes.  However, "a corporation cannot conspire with itself through its agents when the acts of the agents are within the scope of their employment.  The intracorporate conspiracy doctrine is equally applicable to governmental entities."  Larson, 76 F.3d at 1456 n.6.

      Even assuming Moore could enter into a conspiracy with the City of Kulm, United has not set forth specific facts that would indicate the presence of a conspiracy.  Plaintiff cannot set forth any material facts beyond the isolated statements already described, and rejected, above.  There is also no evidence that the City of Kulm conspired with Moore Engineering to deprive United of its rights under contract and under equal protection and evidence that Kulm was aware

of the comments made by DuBord is similarly lacking. Lastly, United had not made claims of discriminatory treatment known to Kulm at any point prior to litigation. Summary judgment in favor of defendant is thus appropriate as to Plaintiff section 1985 claim.

### III.  United's Sate Law Claims

United also alleges the state law claims of breach of warranty and breach of contract. United urges this Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) even in the absence of viable section 1981 and 1985 claims. Typically, when a court has resolved all federal claims before trial, the state claims should be dismissed. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Such state claims should only be preserved when the interests of fairness to the parties, judicial economy, and convenience are served by maintaining the state claims, in light of the extent of pretrial proceedings. Univ. of Colo. Hosp. Auth. v. Denver Publ. Co., 340 F. Supp. 2d 1142, 1146 (2004) (citing Thatcher Enter. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)). Here, the interest of judicial economy is best served through dismissal. "[T]he judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues whenever possible." Gregoire v. Class, 236 F.3d 1095, 1098-99 (8th Cir. 2000); Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 977 (8th Cir. 1993). The Court therefore dismisses the state claims without prejudice.

### Conclusion

This Court **GRANTS** summary judgment as to Plaintiff's section 1981 and 1985 claims. The state claims are **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

Dated this 1st day of September, 2006.

_____
RODNEY S. WEBB   District Judge
United States District Court